Good morning, everyone. The first argued case this morning is number 18-1108, Prism Technologies LLC against Sprint Spectrum L.P., Mr. Andre. May I please report? It's undisputed that there were claims that Sprint was found to infringe that were not involved in the T-Mobile trial. It's undisputed and I thought that's very much disputed. That may even be the central dispute. No, it's undisputed that there were claims, claims 7 and 33 were found to be infringed by Sprint. They were not involved in the T-Mobile trial. That's undisputed. Oh, not in the trial. The trial, that's correct. Yes, right. And the claims at trial in the T-Mobile case was the only claims that the T-Mobile panel had jurisdiction over because they were asserted as affirmative. The 101 defense was an affirmative defense. And that's because of cases like Sandisk and Alcon? Yes. And Cardinal Kim, the Supreme Court case, said once the infringement issue comes out of play, all the affirmative defenses go moot. Can you explain the history of how you went from the complaint, which identified certain patents, to the election of a certain set of claims, I think maybe 20 claims, and then ultimately to the four claims that were litigated at trial? I didn't see any notice or anything else in the joint appendix that explained how the plaintiff went from those 20 elected claims to ultimately the jury verdict form, which showed four claims had actually been litigated at trial. It was through stipulation by the parties. When we started getting ready for trial, obviously, you have to select which claims you want to go for and which ones you want to drop. And so in that particular instance, it was stipulation by the parties that we'd only try those claims and dismiss the others and that the parties would not use those dismissals in any advantageous way. Is that stipulation in the appendix somewhere? It is not, no. Are we talking about this case or T-Mobile? Both. In T-Mobile, there were six cases, six claims tried, right? That's correct. Four here. That's correct. And even the trial before that with AT&T, a similar process was used. So in this case, because of the four claims in Sprint, two of them were not in T-Mobile, and there was no affirmative defense against that. Those claims still stand valid today under 101. So if that is what this court finds, then there's no basis for the district court judge to set aside this court's mandate under Rule 60 because there are still infringed valid claims in the case. That would be an error. I also want to talk about the collateral estoppel issue. Collateral estoppel is not— I want to comment briefly on your opposing counsel's argument that there was a summary judgment decision that found all of those 20 originally elected claims to be valid and patent eligible. And then their 50B motion referenced basically wanted to revisit that decision, that summary judgment decision by the district court, i.e. all 20 claims. And then it appeared that through the federal circuit briefing in the T-Mobile appeal, it appeared that the parties seemed to contemplate that the asserted claims did in fact include the very claims we're talking about here in this Sprint litigation. The asserted claims in the T-Mobile trial were—went up on appeal. Well, yeah, I know that's your position, but I'm trying to understand, well, would you agree that the federal circuit T-Mobile briefs appeared to be talking about the very claims that were in this Sprint litigation? I think it's ambiguous at best. I think it's ambiguous that they were talking about the summary judgment because the summary judgment— Well, at least the claims that were here. I mean, I can't remember the numbers, exact numbers, but some of the claims that you're saying survived the T-Mobile litigation, they were at least discussed in the briefs in the T-Mobile appeal. Is that fair to say? They were discussed—the claims themselves were not discussed. The summary judgment finding was discussed. In the summary judgment finding, the district court found that there were inventive concepts on the independent claims and further found there was an inventive concept on the dependent claims. May have separate finding of that. So, if I look in the T-Mobile federal circuit briefs, I won't find any reference to the two claims that you're saying survived? No, you won't see the reference to those specific claims. I thought— It would be asserted claims. I thought that if you look at—I think I'm looking at the right pages, but Appendix 36708 and 709, which I think is your—yeah, your yellow brief. Yes, your yellow brief. You do actually refer to the claims here. I have it—not have it marked. I mean, as well as other claims that did not go to trial in the T-Mobile trial. I'm looking at A-35094, A-35095. Yes, I guess that's—that's your brief, right? Prison's brief in the T-Mobile federal circuit appeal. Where you identify, among other claims, towards the bottom of A-35094, Claim 33 of the 345 patent. Recites that the functionality of the authentication server is at least partially distributed to another server. And then you go to the next page. In the middle, we talk about—or you talk about how some of these dependent claims, including Claim 7 of the 155 patent, is something coming from an external device inserted into a reader associated with a client computer or a SIM card. So getting back to my question, isn't it true that in your—in Prison's brief in the T-Mobile federal circuit appeal, you identified and discussed the very claims that you're saying weren't part of that appeal? Yes, it was discussed in the appeal, but during oral argument, Judge Proust asked if there—and we have jurisdiction over those exact claims that were not subject to the T-Mobile trial. Those exact claims? Those claims— Nobody discussed in the oral argument Claim 33 of the 345 and Claim 7 of the 155. What was discussed was would there be— That's right, right? That's correct. Okay, so when you say the exact claims were said in the oral argument are not part of the appeal, I don't know if that's really accurate. Well, I guess what I'm trying to say is we're talking about the—we're talking about the asserted claims on the appeal. Judge Proust asked if the court has jurisdiction over the claims because they were affirmative defenses. The party said—I said and then the T-Mobile counsel said, no, they are only affirmative defenses, not counterclaims. So in that particular instance, you have to go back to the Cardinal Kim case or several other cases that talk about once those claims are dropped, the affirmative defense is moot. So it would be akin to us trying to go back and say those claims against T-Mobile, we'd like to go back and do a summary—do an appeal on infringement of those. We dropped them. Just to reiterate what I referred to in passing at the beginning, the Sandisk and Alcon principle says, and I think in terms, that we do not have jurisdiction over claims where there are no counterclaims that have been dropped by the patent owner along the way to getting to trial. That's correct. And that's a principle that we're relying upon. I do want to talk very briefly about the collateral estoppel issue as well because I think that's an important issue here. Collateral estoppel was not meant to be retroactive. Collateral estoppel, if you look at the Blonder Tongue case, it was actually meant to be pled and given notice. In this case, the case was done. This case was past finality. It has nothing left to do except enforce the judgment. Well, except a cert petition either was about to be filed or already had been filed. So it wasn't final in the usual sense, I think, relevant to leaving erroneous judgments in place. When we went to enforce the judgment when the mandate issued, I think it was done at that point. As you know, mandates issue even when cert is pending. And so the mandate is really of no significance for finality purposes. Well, this came up on our issue to enforce the judgment. The final judgment had been entered, mandated, issued, and we went in to enforce that judgment, collect the bond, the superseded bond that was out. So the fact that you can go back retroactively and apply collateral estoppel is against the very principles that Blonder Tongue and its progeny, Mendenhall and others, talk about. In those instances, in every single instance, there are pending litigations. Cases are pending. That's in Mendenhall, that's in Blonder Tongue, and every case after that. We could not find a single case where collateral estoppel was applied retroactively to a case that after a mandate had issued. We couldn't find anything. Is there a case that says something to the contrary? After a mandate issues, you can never, ever, ever use collateral estoppel? I think Blonder Tongue is probably the most instructive because there it talks about the purpose of collateral estoppel, the pleading aspect. It's to allow the person who's pled against a chance to argue. We never had due process. We did not have a chance to address the collateral estoppel issue. It was something that was just thrown at us. We never had a chance to put together a record on the collateral estoppel. When they filed their 60B motion, you didn't have a chance to file an opposition to it? We filed an opposition, of course. But we couldn't develop a factual record because the case was open. This is the biggest issue about trying to apply collateral estoppel retroactively. Could you imagine if a case two years, you know, you win a case, you could go collect judgment. Two years later, the patent's found invalid through IPR for other process. A petitioner could go under Rule 60 and say, I would like to reverse that judgment, get the money back. You can't go back in time once the case has written, got to the finality. So I think the application of collateral estoppel doesn't apply. You're running out of time, but let me just quickly ask. Hypothetically, if we were to agree with you that the T-Mobile litigation did not invalidate two of the claims that were litigated in your case, would that just call for an outright reversal of the 60B grant? Yes. Or would we need to remand it back to the district court to decide whether to re-evaluate or how to re-evaluate Sprint's 60B motion, given that some of the claims that were litigated in this case and that were the basis of the damages verdict, in fact, were invalidated in T-Mobile? Assuming we agree with that collateral estoppel properly applies. If you agree with collateral estoppel and there was exceptional circumstances under the 60B, which I don't have time to address right now, but I'll stay on the papers, I think reversal would be the appropriate remedy. Two claims would be standing, valid claims that were found valid and infringed. So I think a reversal would be the adequate. And then two claims were invalidated, though. Yeah, but, you know, the law of— That were found to be infringed. Yeah, two that were found valid and infringed. Those would support the damages award. And there was no argument in the 60B motion, as I understand it. Tell me if this is wrong, for essentially half a loaf relief, namely. No. Sprint didn't say, even if some of the four claims at issue here are invalid, then we need a new trial. That was not in the 60B. Before you go, your side was part of the PRISM T-Mobile litigation. Is there a way we can get a copy of that joint stipulation order notifying the trial court about the whittling down of the elected claims down to whatever it was, six claims that were actually debated at trial? It may have just been email correspondence between the parties, but we'll get that to you, yes. Thank you. Good, thank you, Mr. Andrews. Save you rebuttal time. Thank you, Mr. Phillips. Good morning, Your Honors, and may it please the Court. Let me start just quickly on the finality point because it does seem to me that Mendenhall completely answers that particular question. I mean, Mendenhall specifically says that you can raise the collateral estoppel at any time during the, during the, at any stage of the proceedings, and it specifically says, absent a final judgment ending the litigation, that it's a, that it's not final for purposes of the collateral estoppel rule in Mendenhall, and therefore, we clearly have additional proceedings going forward, and the district court properly will apply Rule 60 under those circumstances. I don't want to dwell on this, but I guess I do want to ask you about this. It seems to me that your argument doesn't actually feel like a collateral estoppel argument. It, because when I think of collateral estoppel, there has to be the same issue in the two cases, and the first case resolves an issue and then it thereby resolves the issue in this case, and we don't have any validity issue. So it feels like this is a kind of a patent policy rule that says when a patent is still being pressed, if it has been held invalid elsewhere, it can no longer be pressed, but that wouldn't really satisfy the fundamental requirements of collateral estoppel. No, I agree with that, and I think if you, I mean, blonder tongue's always been thought of as a sort of collateral estoppel case, but the reality is that what drove blonder tongue was that language that was said. Basically, there's a fundamental public policy of the United States that you cannot obtain recompense for a patent that has been declared invalid, and that's an overriding policy, and it trumps contractual agreements to the contrary. It trumps notions of finality unless you have something where you're at the final proceedings and there's no litigation going forward. I guess when it comes to issue preclusion, there's no validity issue in your case in Sprint, right? I mean, for whatever reason, Sprint never challenged the validity of the patent. Right, so what we're basically arguing, and what blonder tongue, I think, creates the basis for, and what Mendenhall says plainly is even if you didn't raise the validity issue, you still are entitled to have the validity determined at any stage in the proceedings, and you cannot recover. The patent holder cannot recover when the patent has, in fact, been declared invalid. I'm not sure Mendenhall gets you there, because if I recall right, there were the two cases involved in Mendenhall, and one, there was a validity issue raised, and the other, there was essentially a contract, which is to say a promise, we will be bound by the other thing. So that seemed to me to fit pretty comfortably within the ordinary standards of issue preclusion. Nevertheless. But if you look at page 1578, I'll just quote it for you. This court rejected the argument that Thompson Hayward could not raise the defense because it had never challenged the validity of the patent at trial. So the case that the court relied on in Mendenhall specifically involved that situation, and the court embraced that. But that was also a praise, I'm sorry, a promise case, if I remember right. They say, we will be bound by whatever is happening in the other case. Right, which is essentially what, I mean, in terms of the stipulation. Which makes this unusual, but I'll take as a given for the rest of this, that if there's even an unraised, an invalidation even without validity issues or promises in the second case. Right, that there is an overriding public policy of not allowing patent holders to extract from patents that this court has declared invalid. How do we legitimately find that our T-Mobile ruling covered, what, 33 and 7 here? The original asserted claims were the 20 asserted claims out of the whatever, several hundred claims that were in that patent. That's specific, and that's where the language asserted claims come from. Well, no, I don't think it actually does, because in T-Mobile's Rule 50B motion, it specifically uses the language asserted claims to refer to only the six that were tried. At some points it does, and at some points it doesn't. Right, but the Rule 50 motion is what we said we were ruling on. Right, but the T-Mobile's Rule 50 motion specifically asks for declaratory judgment of ineligibility as to all of the patents. And if you look at page 10 of that brief, which is 34730, footnote 4, I'm sorry, says, while PRISM subsequently narrowed the case at trial, T-Mobile maintains that all of the claims addressed in its motion are patent ineligible. And then it later says, following… I'm sorry, what page are you at? That's 34730. I apologize. Okay, this is your Federal Circuit brief. This is T-Mobile's Federal Circuit brief. Right, this isn't your 50B motion. No, but what I'm saying is that for purposes of how this litigation has gone forward, in the 50B motion, they specifically identify seeking declaratory relief. And when they get to this court, they cross-appeal specifically to put the eligibility issues before this one. We don't know that, because they had an attorney's fees appeal. They needed to cross-appeal for that anyway. Yeah, but… Lots of people file incorrect and unnecessary cross-appeals. In that one, it was actually necessary because they were… Right, but it would also be necessary if you were trying to knock out the remaining claims of the patent against which have been held, for which there is, in fact, a summary judgment that they are valid as against you. But wasn't there a colloquy in the oral argument here in the T-Mobile appeal that confirmed that all the validity questions that T-Mobile was advancing was in the context of an affirmative defense and not a counterclaim? No, the exchange is very clear. Judge Prosser does not… I don't think she uses words like that. Judge Lurie. Or maybe it was Judge Lurie. Says specifically, refers to 102 and 103, which were, in fact, defenses as tried throughout the litigation. There had also been a request for counterclaim as to those. And so the concern was, having not addressed the counterclaim as to 102 and 103, was there really a final judgment now? And they said, no, those issues had merged. But it has always been, it was always the position of T-Mobile, both before the district court, which is what the district court held in the 60B motion, but even in the proceedings before this court, T-Mobile consistently said, we cross-appeal to challenge the eligibility determination of the district court. But how can they do that? Because if, and I think it is actually quite clear that as to 101, there was no counterclaim. It was only, I know you have a little argument, but put that aside, that that was only an affirmative defense. And then you have cases… You're going to say as to 101 that there was never a counterclaim? That's exactly right. But, I mean, the… I think, if I remember right, all you have is that in the answer to the, I don't know, third amended complaint or second amended complaint, there's a kind of introductory phrase about invalidity that says under Section 135 U.S.C. 1 and others, but then the specific counterclaims are only 102 and 103 and 112 maybe also. Right, what it says is… Not 101. Right, but that's in the answer to the counterclaim. But when you get to the point where you're talking about, in T-Mobile's own description of the post-trial rulings in its brief to this court, it says following trial, T-Mobile renewed its request for declaratory judgment that the asserted claims are patent ineligible, citing to the appendix 3909 and 39215 of the appendix in that case. So what is that supposed to tell us? Are you saying that at least it was T-Mobile's belief, subjective belief, that it had, in fact, filed a counterclaim on Section 101 grounds? Well, I don't know that it's a subjective belief. I think it actually, well, it did, in fact, file. It filed summary judgment that those claims are ineligible for patentability. It defended it. It cross-appealed on that basis and put the issue before this court. Let me ask it this way. Is your position that all of the claims in this Sprint case were invalidated in the T-Mobile appeal contingent on us concluding that there was a counterclaim filed by T-Mobile on Section 101 grounds? No, I think at the end of the day it doesn't matter because I think whether or not this court had jurisdiction. Okay, so let's assume for the moment we don't find or we don't conclude that there was ever a Section 101 invalidity counterclaim in the T-Mobile case and that Section 101 invalidity was based on and was just an affirmative defense. Where does that take us given that it appears that what was actually litigated at trial in front of a jury in T-Mobile were a handful of claims that didn't completely encompass all of the claims here litigated in the Sprint case? But what was actually litigated in this court was, and this is the heading from Prism's brief to this court. The district court found the asserted claims to be patent eligible. And then you go to the two pages, I think Judge Toronto, you identified or maybe it was you Judge Chen. They appear exactly the same pages appear twice in the jury. Right, where they defend exactly these provisions as what? The asserted claims to be patent eligible. Where's the language that Prism used about the asserted claims? That's in page 10 and 11 of our brief, Your Honor, in which they say the same. I mean, they quote the exact language. They quote 7 and 37 and say that they each provide very concrete ways that make this concept inventive. I'm sorry, are you referring to Prism's T-Mobile Federal Circuit brief or are you referring to Prism's T-Mobile Federal Circuit brief? I can't remember now what Judge Toronto's question is. Which one are you looking for? If you're talking about the actual claims 33 and 7 that were referenced by a party in the T-Mobile Federal Circuit appeal brief, then that was done by Prism's brief. Well, it was done by both. It was done by both? Yeah, it was done by T-Mobile as well. If you look at 35094, that's Prism's brief. Right. And then T-Mobile's brief is not actually in the joint, that's on the joint appendix, but obviously the court can take public notice of a filing in this case. But if you look at pages, I apologize, pages 66 and 67, in the T-Mobile brief, raising these issues on this cross appeal specifically says similarly tracking usage data to be applied for billing purposes. 155 claim 37 is not inventive, but rather inherent in any postpaid services to telephone or utilities. And finally, having an additional piece of generic software, at least one of the functions of authentic server adds nothing inventive. So they raised those specific claims in their cross appeal. The Prism didn't challenge it, didn't say you should dismiss that part of the cross appeal. Responded to it in kind, said, absolutely, those are eligible. The reply brief comes back in and says, no, they're all not eligible. So there's no question they had a full and fair opportunity in this court. Here's a hypothetical. Do the parties have the power to litigate something that had been mooted at the district court level? I think the answer would be no. Even if everyone was under the mistaken belief that these claims were still somehow part of the case, that can't control what this court is empowered to adjudicate. Well, I think for purposes of dealing with this, I mean, this court undeniably adjudicated that, in my mind, undeniably adjudicated that issue. They never challenged it as being beyond the court's jurisdiction to decide at all. Am I misremembering? I thought, I guess I remember being struck by the fact that our opinion doesn't say what claims it's adjudicating. You just can't tell from the opinion. Is there something in our opinion that actually identifies the claims being adjudicated? I thought it says, everybody agrees claim one is representative. But representative of what? Of six claims or of 20? Right. But if you put it against the context of how the case was litigated to them. And remember, the only basis for the disposition is the cross appeal. I mean, the case is disposed on the cross appeal. The only substantive issue in the cross appeal is the eligibility issues that applied as to all of the patents that was litigated as to all of the patents. It would be passing strange for them to say, all we're going to decide is a cross appeal as to these two specific points, as to only two of the specific claims under these circumstances, having had a full and fair argument on the basis of the entirety of the claim. So I don't think there's any question what this panel thought it was deciding. Whether it had jurisdiction to decide that at this point, I think, is beside the point. It declared it invalid. Its judgment is final. There is no basis for another court. There's certainly no basis for the district court or for this court to second guess that ruling by the court when it clearly had the issue before it and resolved the issue before it. And what would make this all particularly anomalous is it is 100% clear that all of these 20 claims are patent ineligible. Well, except you didn't make any argument of the sort that says your only basis for your 60B motion, whether it's Blondertongue or Mendenhall, which is, that's already been decided. So we don't have a question where there is a different set of claims here, but logic tells you if those are invalid than these are. You don't have an argument like that. You just have a, this has been invalidated, so the claims here must be gone, which seems to me to make everything turn on what one can discern was actually held invalid. And it seemed to me, I guess, that we did not say, in our opinion, what claims were in front of us. And the rule, what we did say was we're ruling on a cross appeal from the denial of 50B and T-Mobile in the 50B says expressly the asserted claims are the six. So I guess I'm having some trouble getting to the conclusion that all of the claims at issue here were in fact invalidated by this court's ruling. Except that what the court, when they talk about the, when the court, in 34226, when T-Mobile seeks Jamal, it specifically talks about a declaratory judgment. In that case, on ineligibility of all of the claims therein, referring specifically to the summary judgment. Which page are you referring to? I'm hoping it's 34226. Does not, does not prevent it from now entering a declaratory judgment of ineligibility, request the court enter judgment that the asserted claims of prison patent suits are ineligible. But then everything depends on what asserted claims mean. If you go two pages over to, I guess several pages, four pages over to 34230, for example, although the inventors testified that the inventive aspect of their patents focused on hardware identifier, etc. Then instead, the asserted claims begin with step of receiving. So this is, and then what's cited there is exactly the six claims at issue. TX1, that's the 345 patent, claim one, see also 77 and 87, and then TX2, which is the 155, which is claims 11, 37, and 56. So they're exactly the six claims that are in the verdict form. So I guess what I'm thinking is, is the asserted claims changed over time. And by the time this was filed, T-Mobile was recognizing there were six of them and not more. There used to be 25 or something. But I don't know how you could square. I mean, I get that there's confusion as to what asserted claims means because it has different meaning in different context. But I don't see how you get out of the fact that in response to the cross appeal, seeking to get an affirmance of a declaratory judgment that these are invalid, PRISM specifically, its heading is, the asserted claims are patent eligible. And that's in response to an argument specifically made by T-Mobile that all of those claims are ineligible. So at that point, at a minimum, PRISM understood. And what you're referring to by the T-Mobile specifically argument is the footnote that says T-Mobile maintains that they're all- That's part of it. What else is there? And then- You may have pages from T-Mobile's brief that are not in the joint appendix. Right, and then they say, following trial, T-Mobile renewed its request for declaratory judgment that the asserted claims are patent ineligible. And in that, it says, it has all- You know, it has consistently, and it said, all of the claims that we raised in the summary judgment. That was what we understood all along. Right, 34- 34787 all- It refers to all of the claims therein, referring to the summary judgment motion. So we, undeniably, we're bringing in all- Everybody understood that. And what I was going to say, Judge Toronto, as to how it's anomalous, is we know there are two more defendants out there. U.S. Cellular and Verizon. And there is no way that either of them is going to pay a nickel on these claims. Did they raise 101 defenses? Yes, I think they have. But it's not a small distinction. Well, but if they didn't do it before, they will certainly do it now. And so you're now in a position where absolutely invalid claims, and that nobody can seriously doubt are invalid. But, candidly, I don't think you can doubt that the panel itself ruled that way in any event. It's going to be held to say that one party is entitled to $30 million, and nobody else has to pay a penny on that? That's not- I mean, that's exactly what Blonder, Tong, and Mendenhall say you shouldn't do. Judge Chin, the one question I want to ask you, or wanted to answer that you asked, which is, what do you do if you say, okay, I'm not sure that those two are in or out? I think it's not your reverse. You'd send it back to the district court to make another determination of what's the effect of knocking out those that have been, in fact, knocked out, and then determine what if, I mean, whether or not it's fair under those circumstances. How would collateral estoppel, and I'm using that term a little loosely here, apply in this context when, you know, we would know that a certain number of the claims, in fact, did survive? Right, but we also know that two of those claims are dead on arrival, and they don't dispute that. They were tried and declared undeniably invalid. And we don't- and there's no way with a general verdict to know how the jury came out the way it did. And the principle of law, right, from Blondertongue is patent holders should not take a nickel for claims that are invalid. Do you happen to know whether the damages case, either the affirmative case by PRISM or whatever your defensive case was, said anything about whether different damages might exist depending on which claims were infringed? I don't know that we- I don't know the answer to that specific question, Your Honor. But it would seem to me the easiest solution to the problem would be to say, what we know is you can't take from the claims that have been declared invalid. Except this was not part of your 60B motion. Well, we asked for everything to be, I mean, you could say it's fairly subsumed within the request across the board. I guess we could just- Yeah, no, I guess we did say in our reply at 60B and 35081 that you have to reopen the judgment because at least two of the claims have been declared invalid. So we did, in fact, present that to Your Honor. Anything else for Mr. Phillips? Thank you. Any more questions for Mr. Phillips? There'd be nothing that would prevent you from just refiling a 60B motion predicated on this new theory that half the claims have been validated and therefore, somehow, that requires to set aside at least a portion of the damages for it. Is that right? If we were to- Yeah, well, if you- I mean, I guess if you- Well, you'd have to- Yeah, I guess- I mean, in reverse and presumably- Did I do that? My bad. I've been doing this a long time. It's never happened to me. Okay. Okay, thanks. Okay. Good. Thank you, Mr. Phillips. Thank you, Your Honor. We'll start with five extra and we'll see. Mr. Andre? Thank you. The one thing that my friend did not address is the concept that if these are affirmative defenses and those claims were not tried, does this court have jurisdiction over those claims? And I think the answer to that is no. They're affirmative defenses. Once we drop those claims, they were not tried, those affirmative defenses become moot. I also want to talk about, very briefly, the exceptional circumstances. Just hypothetically, if our opinion in the T-MOGA repeal had, in fact, called out claims 33 and 7 in the decision in validating them and the others under Section 101, then even though you may have some kind of jurisdiction argument, given what claims are actually asserted at trial, you wouldn't really be able to have an argument that we couldn't have meant what we said when we said what we said in the opinion. Is that fair to say? It's fair. If this court tells me what the law is, I follow what this court says. So, yeah, that's correct, Judge Chan. I think that didn't happen, obviously. The idea that you could go back in time and take away a verdict. They had their bide apple. As Judge Toronto talked about, they waived their invalidity. They didn't bring up the 101 or 102, 103, 112 at trial. They just intentionally dropped those. Right, but I guess it keeps seeming to me that everything here comes down to how we interpret what happened in T-Mobile. Now, it's true that there was not a formal, I don't mean to diminish it by that, formal counterclaim about 101. On the other hand, if the parties more or less agreed by their actions or their words that the 101 issue that had been decided at summary judgment remained in the case, why should we not treat that as a de facto acceptance of what amounts to a counterclaim, even though not formally said, which would then enable their argument to get off and, you know, go off to the races. But, and then the striking fact is what you said in your briefs in this court, in which you discussed not only 33 and 1, but a bunch of other claims that were the subject of the summary judgment ruling but not tried. Yeah, I think the briefing on those issues, they were not tried. They were meant to put in the inventive concepts that were found by the district court judge. But the inventive concepts that appear only in claims not at issue really shouldn't have been relevant. So the claims certainly were suggesting that they were at issue. I think maybe that is an advocacy position you take during briefing that it doesn't change the fact that in our initial appeal, we appealed the infringement finding of the six claims in T-Mobile. And we didn't address the other claims that were dropped. So I think that that's. Yeah, but you wouldn't have addressed those in yours. This was a probably an unnecessary cross appeal if it was in fact only affirmative defenses but necessary because of the fees questions. But then the question is, what can one tell from the briefing in particular, I guess, from your yellow brief, third round of four rounds, about what you thought was in front of the court? And your discussion of a whole lot of claims that were not tried, I think, communicates you thought that the 101 issue before this court was not limited to the tried claims. Well, I think it's hard to go back and think what was in the mind when we were drafting our briefs because the 101 issue that we thought was inappropriate before the district court, even the summary judgment standing stage, we said that they did not plead the 101 properly, even at the summary judgment. They didn't have a claim for 101 in the case, not even as an affirmative defense. That was our briefing down below. And so when we come up to this court and they bring up on a counterclaim, we do mention all the claims in which the judge referred to, but it doesn't change the fact that it doesn't confer jurisdiction on this court on the T-Mobile panel because that was not tried before the jury. Unless we could fairly characterize your action in this court as having effectively accepted that there was a counterclaim though not formally stated. Well, then you have to go back to the, like I said, the briefing down below where we actually said that we didn't think they pleaded at all, even as an affirmative defense, and the district court judge just disregarded our argument on that point. With my last few seconds, I do want to just talk about the exceptional circumstances that you'd have to find under Rule 60B and what effect the waiver has on that, the waiver of defenses, even if you were to find that there were counterclaims and the claims are invalid. When you waive the defense, this court in Fisker, Lazar, Louisville-Bedding, and Broyhill, and the Supreme Court in Ockerman all found that once you waive that defense, you can't go back and get it back on 60B. So there's precedent that, you know... Were any of those collateral estoppel cases? I don't think they were. They were not collateral estoppel per se, but it was on 60B. If you waive a defense, you can't go back and recover. They were all claim construction, unenforceability, evidence of infringement, and that type of stuff. It wasn't collateral estoppel, but it was defenses that the other side waived and intentionally abandoned. So I don't think there's an exceptional circumstance in this case. Further questions? Any more questions? Thank you very much, Your Honor. Thank you. Thank you both. The case is taken under submission.